HAGENBECK v. HAGENBECK ZOOLOGICAL ARENA CO. et al.

(Circuit Court, N. D. Illinois. December 23, 1893.)

1. EQUITY JURISDICTION—ACCOUNTING.
   Where the complainant claims from the defendant an exact sum of money, and the defendant admits that complainant is entitled to that sum, less only certain unliquidated damages, there is no ground for an accounting.

2. PLEADING—ALLEGATION OF CORPORATE INSOLVENCY.
   An allegation that the assets of a corporation are insufficient to pay all its liabilities, counting its capital stock as a liability of the corporation to its stockholders, is not sufficient to show that the corporation is insolvent.

3. TRUSTS—EQUITY JURISDICTION.
   Complainant agreed to furnish trained wild animals for exhibition by defendant in its arena, complainant to receive each day a certain proportion of gross receipts. Held, that defendant's possession of complainant's share of the receipts constituted a trust cognizable in equity.

4. TRUSTS—SUIT TO ENFORCE—RECEIVER.
   In a suit to compel a trustee to account for trust funds, which he should pay over to the beneficiary, and which he retains because of an alleged claim against the beneficiary for breach of contract, it is proper to appoint a receiver to take charge of the fund.

In Equity. On motion for a receiver. Suit by Carl Hagenbeck against the Hagenbeck Zoological Arena Company and others for a receiver and an accounting. Complainant moves for a receiver. Granted.

Vocke & Healy, for complainant.

Moran, Kraus, Mayer & Stein, for defendants.

GROSSCUP, District Judge. This is a motion for the appointment of a receiver. The bill and answer, taken together, show that certain of the defendants, who subsequently incorporated the Hagenbeck Zoological Arena Company, procured a concession from the Columbian Exposition under which, upon payment of 25 per cent. of the gross receipts, they and their successors were permitted to exhibt, on the grounds of the Exposition, a show of trained animals. Subsequently, an agreement was entered into between them and Carl Hagenbeck, a citizen of Prussia, by the terms of which the defendants were to build and maintain, on the grounds of the Exposition, a suitable arena, and conduct and maintain therein a show of wild animals, and the complainant was to bring to the Exposition his trained animals, and supervise them while here, for which he was to receive, after payment of the stipulated amount to the Exposition Company, one-half of the remaining gross receipts of the show, the balance to be retained by the defendants. In accordance with this agreement, the particular terms of which

are not specially important in this connection, Hagenbeck brought over his trained animals, and installed them in the arena provided by the Hagenbeck Zoological Arena Company. The show was conducted substantially as provided in the contract throughout the summer, and the defendants continued to turn over to the Exposition Company and Hagenbeck the stipulated gross receipts, until the early part of October, 1893, when, upon the pretext that the complainant had not complied fully with the terms of his agreement, the further turning over of the receipts was stopped. Thereafter there accumulated in the treasury of the company a large amount of money, which, under the terms of the contract, would have gone to the complainant, but was withheld, as the defendants say, to recoup them for damages growing out of the complainant's alleged failure to fully perform his contract. These alleged breaches are specifically set up in the bill and answers, together with other breaches alleged by the complainant to have been made by the defendants.

It is apparent from both the bill and answer that, independently of these claims for damages, there is no necessity for an accounting between the parties. The bill shows, and the answer admits, the exact amount of the gross receipts for the period covered, and there is no denial that, subject to the amount paid the Exposition Company, one-half of these are properly coming to the complainant, but for the damages arising from the breaches set forth. These damages are, however, unliquidated, and are in no sense the subject-matter of an accounting proper.

Neither is there, in my opinion, any showing that the corporation is insolvent. Some pretense is made that its assets will not be sufficient to meet its liabilities, including the alleged liability to its stockholders for the return of their subscriptions; but the credit of a stockholder, based upon his subscription, is not to be taken into account in determining the solvency of the corporation.

I am not able to find, upon the facts submitted in the bill and answer, that any partnership existed between the complainant and the defendants. What their liability in that respect to third parties would have been is of no consequence in this case. The evidence does not disclose that, as between themselves, there was any intention to create a partnership, or assume the obligations of such a relation.

The remaining and principal question is whether, under the relation existing, the defendants, from time to time, held one-half of the gross receipts of the show, less 25 per cent., in trust for the complainant, and, if so, what was the nature of the trust. It is plain that, unless the relation is one of essential trust, as distinguished from a quasi trust, or a relation in the nature of a trust only, equity will take no jurisdiction over the subject-matter. A long line of cases has been cited by counsel on either side illustrative of what character of a trust courts of equity will specifically enforce. It is not necessary to review these cases. The test or rule applicable to the case at bar is sufficiently disclosed by a com-

parison of two distinct classes of these cases. It is admitted, for instance, that the intrusting of money to an agent, for a specific purpose, creates a trust in favor of the principal, which will be enforced in a court of equity. On the other hand, the loaning of money upon a promise to repay, though creating a quasi trust between the borrower and lender, does not constitute such a relation as is cognizable in equity. It will be observed that, in the first case, the agent acquires no title in the money possessed, and no right of possession, except for the specific purpose named; while, in the second, a right of possession goes along with the funds, and the lender relies upon a promise, and not upon the thing in specie.

If it were the intention of the parties to this contract that one-half of the remaining gross receipts, after the payment of the sum due the Exposition Company, should belong in specie to the complainant, and should be in the custody of the defendants simply for transmission to the complainant, there would, in my opinion, be created essentially and technically a trust in that fund. If, on the other hand, the complainant had simply the promise of the defendants to pay him each day, for the use of his animals, and the supervision thereof, a sum of money equal to one-half the remaining gross receipts, such would create, at most, only a quasi trust. The contract and its surroundings do not leave this question free from doubt, but, it seems to me, the parties could not have intended that complainant should rely upon a promise only. It is significant that he was not to receive his money at stated intervals of a week or a month, but at the close of each day, and as soon as the gross receipts could be ascertained. This discloses a probable purpose to have his proportion of the gross receipts in specie,—to have, in short, one-half the actual remaining gross receipts, and not merely their equivalent in money.

The show was the joint production of both parties. The plaintiff contributed the animals, and gave to it his personal supervision. The defendants contributed the buildings and necessary equipments, and the personal force needed for performance and maintenance, and the gross receipts were to be divided, practically, at the close of the day's exhibition. The arrangement was essentially the same as if two money takers had been in the box office, and the receipts divided as they came in,—one-fourth to the Exposition Company, and the remainder in halves to the two parties. The defendant and its agents were, in my judgment, simply the custodian of these receipts until the close of the day's exhibition, and had no right of property or possession in them, other than to turn them over to the complainant the moment the convenience of the arrangement permitted. Suppose that a portion of these receipts had been in gold, and the balance in silver, and a premium on the first had appeared during the course of the summer, would it be claimed that the defendants could retain the gold receipts, and turn over to the complainant nothing but the depreciated silver? Such would be their right if their obligation was, not to divide the actual receipts, but to pay only in legal tender one-half the amount of the

receipts. Or, suppose that the agents, at the close of the day's exhibition, and before the division was made, had been overpowered by robbers, or had been overtaken by a fire, which consumed the paper receipts, neither the crime nor the casualty resulting in any degree from their fault, could the complainant, under a fair interpretation of the spirit of the arrangement, have still insisted upon an amount of money equal to one-half of the receipts thus lost or stolen? Such would have been his legal right if the contention of the defendants can be maintained. In my judgment the parties did not intend any such results. Taking this view of the meaning of the parties as expressed in this contract, I am of the opinion that one-half of each day's receipts, after the payment of the Exposition Company, was held in trust for the complainant, and that the defendants, in refusing to transmit to the complainant, at the close of each day, were guilty of a wrongful breach of trust, for which a remedy exists in a court of equity.

The appointment of a receiver is ancillary to this jurisdiction, but seems to me to be essential to a fair enforcement of the complainant's rights. It is true that a court of equity will not appoint a receiver in every case of trust of which it takes jurisdiction, but this case appears to me to be one in which the appointment should be made. The defendants have no right, in law, to arbitrarily seize upon that which belongs to another, even to secure a liquidation of their supposed damages. It does not seem to me that the cause for damages made out by the defendants is strong enough upon the bill and answer to justify the court in depriving the complainant of his prayer for a receiver. The defendants, according to the facts set forth in the bill and answer, did not make any claim for damages until near the termination of the Exposition. So long a delay may not defeat their right now, but certainly does not recommend their cause to the court. The presumption arising from it is that the injury could not have been greatly felt, or some complaint would have been made earlier during the association of the parties. Unless a cause for damages stronger than appears in the mere allegations of these papers existed, the defendants were not justified in withholding the money that belonged to the complainant. The case made out, therefore, is one where the defendants, so far as the court can judge now, wrongfully withhold a trust fund.

The motion for a receiver will therefore be granted.